IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RAYMUNDO JASSO PECINA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 1:26-CV-645-RP |
| | § | |
| TODD BLANCHE, *in his official capacity as Attorney General of the United States*,[1] et al., | § | |
| | § | |
| | § | |
| Respondents. | § | |

**ORDER**

Before the Court is Petitioner Raymundo Jasso Pecina's ("Petitioner") Amended Petition for Writ of Habeas Corpus, (Dkt. 13), and Respondents' Response to Amended Petition,[2] (Dkt. 14).

**I. BACKGROUND**

Petitioner, a citizen of Mexico who "has resided in the United States for over two decades and is the father of two U.S. citizen children," pleads that he "last entered the United States without inspection or admission in 2004," (Am. Pet., Dkt. 13, at 2, 8). Respondents assert[3] that he is being held under 8 U.S.C. § 1226(a) based on Petitioner entering the United States in 2001 on a B-2 visa. (Resp. to Pet., Dkt. 5, at 1–2).

On April 20, 2026, an Immigration Judge provided Petitioner with a custody redetermination hearing and denied bond after finding Petitioner a flight risk. (Order of Imm. J., Dkt. 14-1, at 1). Petitioner now argues[4] that "the bond determination he received failed to meet the constitutional and legal requirements of an adequate bond hearing," given that the "Immigration Judge's decision

[1] Todd Blanche is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).
[2] The Department of Justice represents only federal employees in this action. (Resp. to Am. Pet., Dkt. 14, at 1 n.2).
[3] Respondents' Response to Amended Petition "reassert[s] and reallege[s] all facts and background provided in" its original Response. (*Id.* at 3).
[4] Petitioner also argues that the immigration judge abused their discretion in failing to set a reasonable bond amount. (Am. Pet., Dkt. 13, at 27).

relied on generalized and speculative considerations, including Petitioner's immigration history and the absence of tax documentation, without articulating a reasoned basis connecting those factors to a present likelihood of nonappearance." (Am. Pet., Dkt. 13, at 3). He asserts that his continued detention without "the individualized assessment that due process demands . . . violates the Due Process Clause of the Fifth Amendment." (*Id.*).

**II. JURISDICTION**

It is well-settled that "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Certain provisions of the Immigration and Nationality Act ("INA") divest federal court jurisdiction over certain claims. Relevant to this action, § 1226(e) provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Respondents assert that, under this subsection, the Court lacks jurisdiction to review a discretionary decision made by the Attorney General through an immigration judge. (Resp. to Am. Pet., Dkt. 14, at 3–5).

The Fifth Circuit has held, however, that "[s]ection 1226(e) may strip us of jurisdiction to review judgments designated as discretionary under the pertinent language of the statute, but it does not deprive us of all authority to review statutory and constitutional challenges. We retain jurisdiction to review [the petitioner's] detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition." *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (per curiam). *See also Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018)) (stating that the jurisdictional bar in § 1226(e) "applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases. It does not block lawsuits over 'the extent of the Government's detention authority under the "statutory framework"

as a whole.'"); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (explaining that "the extent of the Attorney General's authority . . . is not a matter of discretion" and is therefore within a court's jurisdiction to review, even where the INA bars review "of the Attorney General's exercise of discretion"); *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (holding that § 1226(e) "does not . . . preclude habeas jurisdiction over constitutional claims or questions of law. Claims that the discretionary [bond] process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241" (citations omitted)).

Petitioner in this case challenges the constitutionality of his detention based on an allegedly constitutionally deficient bond hearing. Other district courts, including those in this District, have asserted jurisdiction over this type of claim. *See, e.g.*, *Covarrubias-Rodriguez v. Noem*, No. 5:26-CV-594-JKP, slip op. at 3 (W.D. Tex. April 23, 2026) ("Similarly, § 1226(e) does not bar a constitutional challenge to the procedures utilized to deny bond to a noncitizen under 8 U.S.C. § 1226(a). Jurisdiction does not preclude review of the habeas claims raised in this case."); *Villa v. Mullin*, 834 F. Supp. 3d 957, 963 (C.D. Cal. 2026) ("As to jurisdiction, as noted above and for the reasons provided above, the Court finds that the foregoing findings regarding the reliance upon improper reasons for denying bond by the IJ does fall within the limited setting in which a federal district court may review constitutional challenges to an IJ's detention determination . . . ."); *Lemus Crispin v. Bondi*, 832 F. Supp. 3d 534, 542, 544 (E.D. Va. 2026) (stating that "§ 1226(e) does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received" and ultimately holding that the "the Immigration Judge relied upon three facts that do not pass constitutional muster"). As § "1226(e) contains no explicit provision barring habeas review . . . its clear text does not bar [a] constitutional challenge to the legislation authorizing . . . detention without bail." *Demore v. Kim*, 538 U.S. 510, 517 (2003). The Court therefore

finds that it has jurisdiction to consider whether Petitioner's bond hearing was constitutionally adequate, though it will not reweigh the factors considered by the Immigration Judge.[5]

## III. STATUTORY FRAMEWORK

Section 1226(a) of the Immigration and Nationality Act ("INA") governs the detention of certain noncitizens "already present in the United States" pending the outcome of removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) permits the Attorney General to detain noncitizens during removal proceedings, but the INA and the regulations adopted to implement its authority afford certain noncitizens opportunities to seek release from detention. *See* 8 U.S.C. § 1226(a).

The first available opportunity for a noncitizen detained pursuant to § 1226(a) to seek release is before an immigration officer, who makes the initial detention determination. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (providing that "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion, release" certain noncitizens "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding"). The detained person can seek review of the initial custody and bond determination before an immigration judge. *Id.* §§ 236.1(d)(1), 1236.1(d).

In conducting a § 1226(a) bond proceeding, an immigration judge "may look to a number of factors" that may be considered in custody redeterminations. *See In Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (explaining factors that an immigration judge may consider in determining whether a noncitizen merits release from bond). An immigration judge's decision to continue detention may be further appealed to the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R.

[5] *See, e.g.*, *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019) (stating that district courts do not have jurisdiction to reweigh the evidence considered by an immigration judge).

§ 236.1(d)(3). At each step in this process, the noncitizen is required to prove that they are not a danger to the community or a flight risk. 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).

"When § 1226(a) applies to Petitioner's detention, he is owed the process given to him under the statute." *Covarrubias-Rodriguez*, No. 5:26-CV-594-JKP, slip op. at 6 (quoting *Gonzalez Arreaga v. Minter*, No. 2:25-CV-03167-TLP-CGC, 2026 WL 279882, at *7 (W.D. Tenn. Feb. 3, 2026)). The "procedures used by federal immigration officials to deny a noncitizen's request for release on bond must always comply with fundamental principles of due process." *Mejia v. Crawford*, No. 1:26-CV-253, slip op. at 3 (E.D. Va. Mar. 25, 2026). *See also Singh v. Bondi*, No. 5:26-CV-0125-JKP, 2026 WL 690013, at *4 (W.D. Tex. Mar. 6, 2026) ("Once it is accepted or concluded that a petitioner's detention is discretionary under § 1226(a), the next task is to determine whether the detention 'violates due process'" (citation omitted)).

## IV. DISCUSSION

Petitioner argues that "the bond determination he received failed to meet the constitutional and legal requirements of an adequate bond hearing," given that the "Immigration Judge's decision rested on generalized and speculative considerations, including Petitioner's immigration history and the absence of tax documentation, without articulating a reasoned basis connecting those factors to a present likelihood of nonappearance." (Am. Pet., Dkt. 13, at 3). Petitioner maintains that his continued detention without "the individualized assessment that due process demands . . . violates the Due Process Clause of the Fifth Amendment." (*Id.*). Respondents do not directly address Petitioner's due process claims. Instead, Respondents largely rest on divestiture of jurisdiction under 8 U.S.C. § 1226(e) and administrative exhaustion arguments. (Resp. to Am. Pet., Dkt. 14, at 3–6). Respondents also briefly argue that any constitutional challenge to the burden of proof should be denied. (Resp. to Am. Pet., Dkt. 14, at 6–7).

As an initial matter, Respondents maintain that Petitioner's claim is premature because he has not exhausted his administrative remedies. (*Id.* at 5–6). Typically, a "person seeking habeas relief

must first exhaust available administrative remedies," *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018), but "[u]nder the INA exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal," *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 904 (S.D. Tex. 2007). *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion only for a "final order of removal"). Given that the exhaustion requirement in the immigration context is likely prudential, rather than jurisdictional, the principles of administrative exhaustion do not bar the Court in this case from considering the petition for two reasons. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs.").

First, Petitioner's filing raises constitutional questions that the BIA may not rule on. *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 672 n.14 (S.D. Tex. 2021). Petitioner does not seek routine review of a discretionary bond determination. Rather, his challenge is constitutional in nature as Petitioner contends that the facts relied upon by the immigration judge in denying bond deprived him of a fair and individualized bond hearing. (Am. Pet., Dkt. 13, at 16–25). As such, it would be "an exercise in futility" for Petitioner to appeal to the BIA. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000).

Second, even assuming that Petitioner could appeal the immigration judge's bond decision to the BIA,[6] requiring Petitioner to wait indefinitely for a ruling would be inappropriate as it would exacerbate Petitioner's alleged constitutional injury—a constitutionally inadequate bond hearing. "Bond denial appeals 'typically take six months or more to be resolved at the BIA.'" *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 680 (W.D. Tex. 2025) (citing *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025)). "The prevention of six months or more of unlawful detention thus outweighs the interests the BIA might have in resolving" the issue. *Id.* at

[6] Respondents maintain that Petitioner "can seek an appeal with the Board of Immigration Appeals," (Resp. to Am. Pet., Dkt. 14, at 2), but this may not be the case given the time elapsed since the custody redetermination order in April 2026. 8 C.F.R. §§ 1003.1(b)(7), 1003.38.

680–81. *See Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *6–7 (W.D. Tex. Oct. 21, 2025). For these reasons, the Court will exercise its discretion to excuse any administrative exhaustion.

Turning next to the merits of Petitioner's habeas petition, an Immigration Judge conducting a § 1226(a) bond hearing "may look to a number of factors," including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The Immigration Judge denied bond for Petitioner in this case because:

> [T]he court finds that the respondent is a flight risk. Exhibit 7 reflects that respondent previously entered on a tourist visa which he overstayed, was then granted a voluntary return by the government and subsequently entered the United States illegally in violation of the law. Additionally, the application gives no clear information of the respondent's tax filing history which may call into question the viability of his application because the absence of tax filings may pose both a statutory and discretionary impediment. See Matter of Dobrotvorskii, 29 I&N Dec. 211, 215 (BIA 2025) (addressing limited relief).

(Order of Imm. J., Dkt. 14-1, at 1).[7]

As an initial matter, the immigration judge's second considered factor, Petitioner's tax filing history, is a constitutionally inadequate reason for finding someone a flight risk. In this case, the Immigration Judge used Petitioner's Form EOIR-42B to note that Petitioner provided no tax filing information. (Am. Pet., Dkt. 13, at 10). However, Petitioner pleads that he "noted on the form that he did not remember [which years he had filed an income tax return] and would provide [this] information during another hearing." (*Id.*). Even if it was sufficient to infer from the absence of tax

[7] Respondents did not provide the Court with "Exhibit 7."

filing information that Petitioner's Form EOIR-42B would fail, the immigration judge failed to explain how her prejudgment of Petitioner's immigration relief informs the conclusion that Petitioner presented a flight risk.[8] *See Mejia v. Crawford*, No. 1:26-CV-253, slip op. at 6–7 (E.D. Va. Mar. 25, 2026) (explaining that an immigration judge relied upon facts that did not pass constitutional muster, including the likelihood of success for immigration relief given that the judge failed to explain how prejudgment of immigration relief prospects informs the conclusion that Petitioner presented a flight risk).

Moreover, tax filing history is not a flight risk factor enumerated in *Matter of Guerra*, and the immigration judge declined to explain how Petitioner's failure to demonstrate a history of paying taxes bears on his risk of flight. *See Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (explaining that failure to pay taxes is a piece of evidence that "bear[s] little if any relevance" to Petitioner's risk of flight) (citing *Matter of Patel*, 15 I. & N. Dec. 666, 666–67 (BIA 1976)). As a sister court in the Eastern District of Virginia found, a failure to file taxes, "standing alone, does not provide the evidentiary support constitutionally required to deny a noncitizen's request for release on bond, particularly given that the Immigration Judge did not consider any condition or set of conditions that will reasonably ensure [the petitioner's] appearance at future proceedings." *See Lemus Crispin*, 832 F.Supp.3d at 544.

In addition to the Petitioner's tax history, the immigration judge also considered Petitioner's manner of entry into the United States, stating that Petitioner "previously entered on a tourist visa which he overstayed, was then granted a voluntary return by the government and subsequently

[8] The immigration judge cited *Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 215 (BIA 2025) for support, providing an explanatory parenthetical that consists of, "addressing limited relief." (Order of Imm. J., Dkt. 14-1, at 1). "Courts have emphasized in a number of contexts, including with respect to due process immigration bond hearings, that adjudicators must provide reasons for their decisions, not only to permit review but as a fundamental element of due process." *Mendoza v. Noem*, No. 26-CV-1260, 2026 WL 1470652, at *7 (S.D.N.Y. May 26, 2026). "A mere mention of" a BIA case "without analysis of [its] content or significance" is insufficient. *See Hootkhil v. Rio Grande Detention Center*, No. 5:26-CV-00768, 2026 WL 2089545 (S.D. Tex. July 14, 2026).

entered the United States illegally in violation of the law." This is a *Matter of Guerra* factor, but the immigration judge's decision provides no rationale connecting Petitioner's manner of entry twenty-two years ago to his present flight risk. *See Muzahir v. Chestnut*, 837 F.Supp.3d 1154, 1159 (E.D. Cal. 2026) ("[T]he Immigration Judge's reliance on Petitioner's manner of entry, without evidence of individualized concerns related to Petitioner, does not reach the clear and convincing standard."); *Tiboko-Tifuh v. Noem*, No. 26-CV-1215-JO-DEB, 2026 WL 1603795, at *2 ("Entry without inspection is common among asylum seekers; absent individualized evidence regarding the particular circumstances surrounding Petitioner's entry or other evidence of past noncompliance, it is insufficient to support a reasonable inference of Petitioner's tendency toward future nonappearance."); *Matter of Patel*, 15 I. & N. Dec. at 666–68 (rejecting immigration judge's sole reliance on noncitizen's visa overstay because doing so "could result in requiring a bond hearing of almost every alien who is held in deportation proceedings"); *Mejia v. Bondi*, No. 26-1592, 2026 WL 752560, at *4 (D.N.J. Mar. 17, 2026) ("Reliance on generalized assumptions regarding manner of entry—without meaningful consideration of the individual's circumstances—undermines th[e] requirement" that "immigration detention is justified only insofar as it serves the regulatory purposes of ensuring attendance at removal proceedings and protecting the community."). Moreover, if "entry without inspection were sufficient to establish flight risk, the discretionary bond framework established by § 1226(a) would effectively be rendered meaningless." *See Mejia v. Bondi*, 2026 WL 752560, at *4. The Court therefore finds that Petitioner's provided bond hearing was constitutionally inadequate, as the only two cited factors considered were constitutionally deficient rationales for finding that Petitioner was a flight risk.

Having concluded that the Immigration Judge's bond hearing did not comply with due process, the Court must determine the proper remedy. A sister court in this District has explained that, when a petitioner complains specifically about the inadequacy of a bond hearing, the Court should explore whether an appropriate remedy is a constitutionally adequate bond hearing. *See*

*Covarrubias-Rodriguez v. Noem*, No. 5:26-CV-594-JKP, at *12–13. Unlike in the many cases before the Court where Respondents are asserting detention authority under § 1225(b)(2) and take the position that immigration judges do not have jurisdiction to hold a bond hearing, here, Respondents themselves assert that § 1226(a) applies, and they agree that Petitioner had the right to a bond hearing. Accordingly, under these facts, the Court finds that the proper habeas remedy in this case is a constitutionally adequate bond hearing. But, given that Petitioner has been detained since February 2026 and given the number of people in detention, the Court will set a deadline by which this bond hearing must happen. If that bond hearing does not occur in a timely manner, Respondents must release Petitioner.

## III. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** insofar as Respondents shall, within fourteen days of this order, provide Petitioner with an individualized, constitutionally compliant bond hearing pursuant to 8 U.S.C. § 1226(a) before an immigration judge.

Accordingly, it is **ORDERED** that Respondents provide Petitioner with a bond hearing as set forth in this order. Respondents are further **ORDERED** to file a status report with this Court **within 2 days** of the bond hearing, stating whether Petitioner has been granted bond, and, if his request for bond was denied, the reasons for that denial. Stating that Petitioner's request for bond was denied because he was deemed a "flight risk," without more, is insufficient.

**SIGNED** on October 5, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE